[Cite as *State v. Henderson*, 2023-Ohio-586.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220216 |
| | | TRIAL NO. 22TRD-4824 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| JEROME HENDERSON, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 1, 2023

*Emily Smart Warner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Joshua Loya*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Frost Brown Todd LLC* and *Nathaniel L. Truitt*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}   Defendant-appellant Jerome Henderson appeals his convictions for driving with expired license plates, driving under suspension, and failing to stop after an accident.   Henderson argues that he was denied the effective assistance of trial counsel because counsel failed to seek suppression of identification evidence.   He additionally challenges his convictions on sufficiency and weight-of-the-evidence grounds.   Because Henderson's arguments lack merit, we affirm his convictions.

## I. Background Facts and Procedure

{¶2}   On the night of December 6, 2021, a driver operating a Chevy Suburban escaped from an apartment parking lot where Cincinnati Police Officer Daniel Wuest was investigating whether there were infractions related to the Suburban.   During the escape, the driver drove the Suburban in reverse to squeeze between Officer Wuest's police vehicle and parked cars.   After striking several cars, the driver then pulled forward to the end of the parking lot to turn around.   Officer Wuest then exited from his vehicle, ran up to the driver's side window of the Suburban, and ordered the driver to stop.   The driver did not comply and instead made an escape by driving past the officer.   During the encounter, Officer Wuest was able to observe the driver's face for a "few moments" from "within one foot" away through the Suburban's window that was not tinted.

{¶3}   The police found the Suburban abandoned nearby.   The Suburban was registered to a white female and the police found nothing in the Suburban tying Henderson to the car.

{¶4}   The following day, Officer Wuest was approached by members of the police district's Violent Crime Squad Unit ("VCS") who had heard about the incident.

They asked Officer Wuest to describe the driver, and Officer Wuest described him as a "male black" wearing "a beanie and sweatshirt." The VCS officers showed him two photographs of Henderson taken by a VCS officer the previous day. Officer Wuest noticed that the individual in the photograph and the black male he had seen driving the Suburban shared the same "high cheek bones" and "facial hair" and, in one photograph, Henderson was wearing the same outfit.

{¶5} Upon learning Henderson's name from his fellow officers, Officer Wuest charged Henderson with several offenses related to the operation of the Suburban. At a bench trial, Officer Wuest, who is white, identified Henderson as the driver of the Suburban with "[one] hundred percent" certainty. Defense counsel, who had not moved to suppress Officer Wuest's pretrial or in-court identification, cross-examined the officer on the identification testimony and argued the identification was not sufficient.

{¶6} Henderson, testifying in his defense, denied being present at the apartment complex on the evening in question. He could not recall where he was, but said he had no reason to be there on that date. However, he admitted that he was in a relationship with a woman living there at the time and his cousin lived there. Henderson further testified that he had never driven the Suburban involved in the incident and he was familiar with the car because had seen a black man with a beard and a white girlfriend driving it in the parking lot. Henderson denied having facial hair on the date of the incident. He presented no evidence to corroborate his testimony.

{¶7} The video captured from Officer Wuest's vehicle dash-camera was admitted into evidence. Upon consideration of all the evidence, the trial court found

Henderson guilty of all offenses and sentenced him accordingly. The court specified that it found the identification reliable though it involved a cross-racial identification. Henderson now appeals, challenging his convictions in three assignments of error.

## II. Analysis

### A. Ineffective-Assistance-of-Counsel Claim

{¶8} In his first assignment of error, Henderson argues that his convictions should be reverse, and a new trial granted because he was denied the effective assistance of trial counsel. To establish his claim, Henderson must demonstrate that counsel's performance fell beneath an objective standard of reasonableness and, but for this deficient performance, a reasonable probability exists that the outcome would differ. *See Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Henderson must establish both prongs; once this court determines a claim is deficient as to one prong, we need not address the other.

{¶9} Henderson specifies that counsel was ineffective when he did not seek the suppression of Officer Wuest's identification. He argues that counsel was not motivated by trial strategy, the motion would have had a reasonable probability of success, and the suppression of the identification testimony would have affected the outcome of the case. We begin with the second prong, and we reject Henderson's claim because it is unlikely that the motion, if filed, would have been granted.

{¶10} Whether Officer Wuest's identification should have been suppressed entails a two-part inquiry. *State v. Neal*, 1st Dist. Hamilton No. C-140667, 2015-Ohio-4705, ¶ 28, citing *Perry v. New Hampshire*, 565 U.S. 228, 238-239, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012). The court must first determine whether the police used "suggestive and unnecessary" identification procedures. *Perry* at 239, quoted in *Neal*

at ¶ 28. If the identification procedures were suggestive, a then a court proceeds to a second question: " 'whether under the totality of the circumstances, the identification was reliable.' " *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Perry* at 239-240; *Neal* at ¶ 28. This test applies both to pretrial and in-court identifications. *See, e.g., Neal* at ¶ 26-31.

{¶11} The state concedes that showing a witness only one photograph is generally deemed unnecessarily suggestive. *See State v. Levingston*, 1st Dist. Hamilton No. C-090235, 2011-Ohio-1665, ¶ 9; *State v. Dockery*, 1st Dist. Hamilton No. C-000316, 2002-Ohio-2309, ¶ 10. The state argues, however, that the identification was admissible because based on the totality of the circumstances it was reliable. Reliable identification testimony may be admitted regardless of the flaws in the identification process. *See Perry* at 239-240; *Neal* at ¶ 28.

{¶12} When evaluating whether the identification was reliable even though the confrontation procedure was suggestive, a court should consider several factors, including "(1) the witness's opportunity to view the defendant during the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the suspect, (4) the witness's certainty, and (5) the time elapsed between the crime and the identification." *Neal* at ¶ 28, citing *Perry*.

{¶13} Here, Officer Wuest had a direct view of Henderson from a range of less than one foot for "several moments," a fact corroborated by the video of the incident. He was pursuing Henderson as part of his investigation of a crime, and the record shows only that his prior description of the suspect was accurate and consistent with the photograph that he was shown. Further, Officer Wuest identified Henderson from

the photographs only one day after the incident, and he remained "[one] hundred percent" certain of his identification.

{¶14} Moreover, the trial court stated that it found the identification testimony reliable, despite the absence of a motion to exclude it. This bolsters the state's position that Officer Wuest's identification would not have been suppressed if counsel had moved for suppression.

{¶15} Thus, even though Officer Wuest first learned Henderson's name after another officer showed him a photograph of Henderson, the totality of the circumstances strongly demonstrates that the pretrial identification resulting from that procedure one day after the incident was reliable and the later in-court testimony was also reliable and trustworthy.

{¶16} Because Henderson was not likely to succeed on the merits of a motion to suppress, his ineffective-assistance-of-counsel claim fails. Consequently, we overrule the first assignment of error.

### B. Sufficiency-of-the-Evidence Claim

{¶17} In his second assignment of error, Henderson contends that his convictions were not supported by sufficient evidence. Specifically, he argues the state failed to present sufficient evidence that he was the driver of the Suburban. We disagree.

{¶18} Officer Wuest testified that Henderson was the person he observed driving the Suburban. This identification testimony, if believed, was more than adequate to meet the test of sufficiency. *See State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26; *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus (When reviewing the sufficiency of the evidence, this

court asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.). Accordingly, we overrule the second assignment of error.

### C. Weight-of-the-Evidence Claim

{¶19} In his final assignment of error, Henderson argues his convictions were against the manifest weight of the evidence. He contends that Officer Wuest's identification was weak because it was a cross-racial identification of a stranger, drawn from a momentary view of the driver through a closed car window at night, and it was tainted by the suggestive procedure employed by the VCS officers.

{¶20} Matters as to the credibility of the witnesses are primarily for the trier of fact to decide. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Importantly, the dash-camera recording from Officer Wuest's vehicle corroborates that the officer had a good look at the driver seeking to escape the parking lot. Moreover, the trial court acknowledged that it was a cross-racial identification and still found the defendant guilty. After reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Henderson's convictions and order a new trial. Therefore, the convictions were not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Consequently, we overrule Henderson's third assignment of error.

### III. Conclusion

**{¶21}** Henderson's three assignments of error lack merit. Accordingly, we affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.